This is a joint appeal by plaintiffs William Leonard Gribble and wife Joan Gribble from separate judgments in favor of defendants John Douglas Cox and Arthur Anderson and Company in separate actions by the Gribbles against Cox and Arthur Anderson and Company that were consolidated for purposes of trial. The amount sued for by each of the Gribbles was in excess of ten thousand dollars, exclusive of interest and costs, therefore the joint appeal to this court will lie.
The action of Gribble was for damages on account of personal injuries and property damage and that of Mrs. Gribble was for the loss of consortium and services of her husband on account of his injuries; claimed to be a result of the negligence of Cox when he ran into the rear of Gribble's auto while the latter was stopped for a traffic light.
For the reasons we will state, the judgments must be reversed and the actions remanded.
The issues tried below were correctly summarized in defendants' counsel's opening statement to the jury:
 "* * * Mr. Gribble had stopped by the light and we don't deny he was there on that occasion and we don't deny the front of Mr. Cox's car struck the rear of Mr. Gribble's car but we deny the nature and extent of the injuries that Mr. Gribble says that he has suffered as a result of this accident."
The contention of Gribble was that he suffered serious and permanent injury and disability as a result of his auto being struck from the rear by Cox's auto. He presented expert medical testimony to support his claim; from that testimony it can fairly be said, without disagreement, that prior quiescent physical conditions of Gribble were awakened and became symptomatic or prior ailments were aggravated. Undisputed proof was offered by Gribble of a small amount ($214) of damage to his auto.
Defendants contend that Gribble suffered no injury whatsoever as a result of the accident; either by the awakening of quiescent conditions, aggravation of prior existing debilities, or otherwise. No expert medical evidence was offered to support this other than by cross-examination of plaintiff's experts and a showing that on the day of the accident Gribble made no complaint of injury. The principal thrust of defendant's case was that Gribble was a malingerer, motivated to be disabled and remain so, in order to receive a pension from his employer together with Social Security disability benefits. In support of their theory of Gribble's motive to be disabled, defendants caused to be admitted, over objection, evidence that Gribble was receiving disability payments from collateral sources: his employer and the Social Security Administration.
The issues presented for review by this appeal are:
1. Whether the trial court committed reversible error by admitting evidence that Gribble received payments from a collateral source.
2. Whether the trial court erred in denying Gribble's motion for new trial on the ground that the verdict was against the great weight of the evidence as to liability of defendants and as to Gribble suffering bodily injury as a result of the accident.
 Admission of Evidence of Collateral Benefits Payments
Defendants agree with plaintiff about the collateral source rule stated in 22 Am.Jur.2d, Damages, § 206:
 "* * * [A]s a general rule, the fact that the plaintiff received gratuitous medical care, continued salary or wage payments, proceeds from insurance policies, or welfare and pension benefits, will not be taken into account in computing damages. * * *"
Defendants attempt to distinguish this court's decision in Vestv. Gay, 275 Ala. 286, 154 So.2d 297. There it was said:
 "* * * Appellants concede that proof that an insured has been compensated for a loss by an indemnity insurer is generally not material and is *Page 1143 
inadmissible, but appellants here urge it should be admissible as having a direct bearing upon the issue of appellee's injuries, especially since appellee allegedly may be malingering or faking illness. While this argument is somewhat ingenious, we cannot deviate from the settled rule in our jurisdiction and declare this to be a proper purpose to enable admission into evidence of the fact of indemnity insurance. Sturdivant v. Crawford, 240 Ala. 383, 199 So. 537; Long v. Kansas City, M. B.R. Co., 170 Ala. 635, 54 So. 62. A strong analogy supporting this conclusion is found in Phoenix Ins. Co. of New York v. Leonard, 270 Ala. 427, 119 So.2d 217. The same contention was there made but rejected. To accede to appellants' argument would tend to either emasculate the rule or render it unworkable." (emphasis added)
Defendants say that benefits received from a source wholly independent of the wrongdoer should not be taken into account in computing plaintiff's recoverable damages; such evidence is not relevant, its existence renders neither more probable nor less probable any material fact in the case. They are absolutely correct. However, they are incorrect when they say that where the purpose of such evidence is not to reduce damages but to show that plaintiff's disability is not as extensive as claimed, and that he possesses a motive quite independent of his alleged injuries for exaggerating the extent of his disability, the evidence is relevant.
The reason underlying the exclusion of collateral source payments is that, weighing the prejudice to plaintiff from admitting that evidence against its value and weight to prove motive or malingering, its exclusion is warranted by the availability of better, less prejudicial evidence on this issue. An excellent discussion of this subject is cited by Gribble and found in 47 A.L.R.3d at p. 238. This court is committed to the rule of exclusion of collateral source payments. Vest v. Gay, supra. In this case there was other evidence available on the issue of motive that would not prejudice plaintiff by its admission; the admission of collateral source payments was prejudicial and the court erred to reversal in admitting evidence of them. This case is not distinguishable from Vest.
 Weight of the Evidence
We need only to address this issue as it relates to liability. This for the reason that if the verdict was against the weight of the evidence as to the liability of defendants to Gribble it follows that he was entitled to a verdict for the undisputed amount of damage to his auto.
What did defendants concede by admitting that the Cox auto struck Gribble's in the rear while the latter was stopped for a traffic light? Gribble says that Tit. 36, § 15, Code, which prohibits the driver of an auto from following more closely than is reasonable and prudent having due regard to the speed of such vehicle and the traffic upon and condition of the highway, was violated and, since there was no evidence of an excuse for that violation, Cox was per se guilty of negligence. Defendants counter that § 15 was not meant to cover the rear-ending of an auto stopped for a traffic signal.
The prohibition against following too closely is merely a codification of one facet of the general rule regarding the exercise of due care by the operator of autos proceeding in the same direction. That general rule is summarized in 8 Am.Jur.2d, § 768, p. 328:
 "The general rule that motorists on public highways or streets must exercise reasonable care in the operation of their vehicles, that is, such care as a person of ordinary prudence would exercise under the same or similar circumstances, governs the reciprocal rights and duties of motorists proceeding in the same direction. When heavily used municipal streets are involved, more vigilance is required in order to comply with the test of ordinary care under the circumstances.
 "Noncompliance with statutes or ordinances governing the operation of motor vehicles may, in itself, constitute negligence *Page 1144 
and render the violator liable for consequential damages in the event any person sustains injury or damage thereby. Moreover, even if a motorist complies with all the requirements of a statute or ordinance regulating the operation of motor vehicles, he may yet be liable for the failure to exercise ordinary care to avoid injury to another traveler in front of or behind him on the highway. Generally speaking, however, a motorist ahead owes no duty to a motorist to the rear except to use the road in the usual way, in keeping with the laws of the road, and until he has been aware of it, by signal or otherwise, he has a right to assume either that there is no other motorist in the close proximity to the rear or that, being there, the motorist to the rear has his vehicle under such control as not to interfere with the free use of the road in front of and to the side of him in any lawful manner."
It has long been assumed by bench and bar in Alabama that one who drives his auto into the rear of another who is stopped in obedience to a traffic light is prima facie guilty of negligence. An extensive search for precedent to support this assumption fails to reveal authority precisely in point. The rule in this regard is well stated in 8 Am.Jur.2d, supra, at § 769, p. 329:
 "A motorist approaching an intersection is also required to have his vehicle under control so that he does not drive into the rear of a vehicle whose driver is obeying traffic signals by waiting for the red light to change."
We hold this to be the rule in Alabama.
Even in light of the rule that gives the great presumption of correctness to the trial court's ruling on motion for new trial with regard to the weight or preponderance of the evidence, we hold it was error to deny the Gribbles' motion for new trial on the basis that the verdict of the jury was sustainable regarding the liability of defendants to the Gribbles.
The admission in this case of evidence of collateral source payments was also reversible error.
REVERSED AND REMANDED.
BLOODWORTH, JONES, ALMON and BEATTY, JJ., concur.